UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY C. BONTEMPS,<br><br>           Plaintiff,<br><br>     v.<br><br>SOTAK, et al.,<br><br>           Defendants. | No. 2:09-cv-02115-LKK-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

This case was before the court for hearing on defendant Smith's motion to dismiss, ECF No. 63. Plaintiff appeared telephonically. California Deputy Attorney General Diana N. Chinn appeared on behalf of Smith. Wendy M. Motooka appeared on behalf of Sotak.[1] A footnote in defendant Smith's motion to dismiss suggests that plaintiff may have served his complaint on the wrong Dr. Smith. ECF No. 63-1 at 1 n.2. Rather than seek dismissal because the wrong Smith is before the court, the Deputy Attorney General opted to seek dismissal on the ground that the allegations against the Smith named in the complaint are not sufficient to state a claim. However, the footnote called into question whether the California Attorney General's Office is representing the Smith who was served with the summons and complaint, thus raising doubt as to the standing or authority to proceed on a motion to dismiss on behalf of an unrepresented party. To resolve

---

[1] As noted at the hearing, defendant Sotak recently filed a motion to revoke the plaintiff's in forma pauperis status. The time for plaintiff's opposition has not yet expired and the court will rule separately on that motion upon the close of briefing.

1

this issue, the undersigned conducted a hearing on March 19, 2013. ECF No. 76. At the hearing, defense counsel and plaintiff clarified that service had, in fact, been accomplished on the correct defendant Smith and that the office of the Attorney General does represent him. Accordingly, the court addresses the motion to dismiss.

## I.     The Complaint

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C § 1983. He proceeds on the Fourth Amended Complaint filed on October 13, 2011. ECF No. 24. The court found that the complaint stated potentially cognizable claims against defendants Smith and Sotak. ECF No. 25. In the complaint, plaintiff alleges that he was arrested on July 30, 2008 and placed in the Sacramento County Jail the following day. *Id.* at 3, 38. At the time, plaintiff had preexisting injuries to his back and right foot. *Id.* at 4, 21, 24, 31. These injuries required that plaintiff use a back brace, air cast, and a wheelchair. *Id.* at 3-5, 38. Plaintiff also took a variety of medications at the time of his arrest. *Id.* at 3-5, 29, 30, 31.

Plaintiff claims that when he was booked into the jail, defendants took away his wheelchair, back brace, air cast, and medications. *Id.* at 3, 4, 38. The assistive devices were not returned to plaintiff for 17 months. *Id.* at 38. Defendants assigned plaintiff to an upper bunk on an upper floor for the first five days of his stay at the jail. *Id.* at 4, 39. Plaintiff had to get other inmates to help him move anywhere, use the bathroom, and bathe. *Id.* at 39. He complained several times and filed grievances, but his assistive devices were not returned to him. *Id.*

Plaintiff attached some medical records to the complaint. *Id.* at 8 *et seq.* To the extent they are legible and relevant to plaintiff's claims, they reveal the following:

Plaintiff was booked into the jail on July 31, 2008. *Id.* at 29. The intake form noted plaintiff's "Rt leg boot" and listed his medications (Norco, Neurontin, and Vicodin). *Id.* The intake officer recorded that plaintiff would be housed in "2East." *Id.* Plaintiff was seen by a medical care provider who noted that plaintiff had no swelling and could walk without a cane. *Id.* at 31. The following day, defendant Smith (a medical doctor) issued a "Miscellaneous Medical Needs" form for plaintiff indicating that he should be placed on a lower tier in a lower bunk and should be provided a brace for his right leg for the length of his stay. *Id.* at 15.

1    A registered nurse charted on August 5, 2008 that plaintiff had come to the jail with
2    bottles of "hydrocodone – apap," "hydrocodone – acet," ibuprofen, and trazadone. *Id.* at 30.
3    These bottles were given to a jail officer. *Id.* On August 13, 2008, a medical provider charted
4    that plaintiff requested stool softener to be taken with his Norco. *Id.*

5    On September 1, 2008, defendant Sotak wrote that he reviewed "ortho notes" regarding
6    plaintiff's foot injury. *Id.* at 17.

7    On November 6, 2008, defendant Sotak noted that Dr. Neblett (an orthopedist, *see id.* at
8    21) had said that "all [plaintiff] should need is a wide supportive shoe." *Id.* at 25. Accordingly,
9    defendant Sotak provided plaintiff with a "post-op walking shoe" and put plaintiff's "walking air
10   boot" in plaintiff's property. *Id.* ("There is no indication for the walking air boot at this time.").
11   Defendant Sotak also issued an order that plaintiff should have a lower bunk on a lower tier and
12   should not engage in prolonged standing, stooping, or walking for the length of his stay. *Id.* at 11.

13   On November 17, 2008, plaintiff complained to Nurse James Austin that he wanted his
14   medications changed to those "prescribed by my doctors." *Id.* at 24. Plaintiff also complained
15   that the boot he had been provided was not working and that the orthopedist had been wrong. *Id.*
16   Nurse Austin noted that plaintiff "has minor variance of gait[, but] displays no distress during
17   ambulation and weight bearing. [Plaintiff] ascends and descends exam table without assistance."
18   *Id.* Nurse Austin wrote that someone would follow-up with plaintiff regarding his complaints
19   after reviewing his chart. *Id.*

20   Defendant Sotak issued an order on November 26, 2008 that plaintiff should not stand,
21   stoop, or walk for more than 45 minutes at a time. *Id.* at 10.

22   Plaintiff complained on January 18, 2009 that he had not received his Norco since January
23   14th. *Id.* at 18. Defendant Sotak ordered plaintiff's Norco renewed the following day. *Id.*
24   Plaintiff refused to be seen for a medical welfare check on February 10, 2009. *Id.* at 12. On
25   March 7, 2009, a medical provider noted that plaintiff's right foot was swollen and plaintiff
26   complained of pain rated 10+ on a scale from one to 10. *Id.* at 13. According to the notation,
27   plaintiff could not walk with crutches but could ambulate to two meters, was taking Norco, and
28   was not in apparent distress. *Id.*

3

The following day, a care provider (possibly defendant Smith, although the signature is not entirely legible) noted that plaintiff had not had his air cast since December 2008. *Id.* Plaintiff told defendant Smith that he had never been seen by the orthopedist, who thought plaintiff would only need a post-op shoe. *Id.* Plaintiff asked for Neurontin to treat his back pain. *Id.* The care provider ordered that plaintiff receive a soft brace, soft shoe, Norco, and a blanket (to elevate) for his right foot and Norco and Neurontin for his back. *Id.*

On March 12, 2009, plaintiff told a medical provider that he used to have a boot for his right foot but that it had been taken. *Id.* at 9. Plaintiff had a "walking cast." *Id.* He asked for a wheelchair to be provided when he went to court. *Id.* The provider ordered the wheelchair. *Id.* Nevertheless, defendant Sotak discontinued the wheelchair one week later "per ortho consult." *Id.* at 9, 27. A radiology report of the same day showed an "ununited fracture [at the] base of the fifth metatarsal." *Id.* at 23.

On March 23, 2009, a medical provider issued an order that plaintiff be housed on a lower tier, in a lower bunk, for the length of his stay. *Id.* at 26.

After being transferred to Deuel Vocational Institution, plaintiff was given orders for an air cast, bottom bunk, lower tier, wheelchair, back brace, and crutches. *Id.* at 32-37.

**II.     Rule 12(b)(6) Standard**

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id.* at 1965. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted). Dismissal may be based either on the lack of cognizable

1  legal theories or the lack of pleading sufficient facts to support cognizable legal theories.
2  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

3  The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v.
4  Flynn*, 744 F.2d 694, 696 (9th Cir. 1984). The court construes the pleading in the light most
5  favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v.
6  Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include
7  specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561
8  (1992).

9  The court may disregard allegations contradicted by the complaint's attached exhibits.
10 *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing,
11 Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998). Furthermore, the court is not required to accept as
12 true allegations contradicted by judicially noticed facts. *Sprewell v. Golden State Warriors*, 266
13 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir.
14 1987)). The court may consider matters of public record, including pleadings, orders, and other
15 papers filed with the court. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir.
16 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104
17 (1991)). "[T]he court is not required to accept legal conclusions cast in the form of factual
18 allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.
19 Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept
20 unreasonable inferences, or unwarranted deductions of fact. *Sprewell*, 266 F.3d at 988.

21 Pro se pleadings are held to a less stringent standard than those drafted by lawyers.
22 *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its
23 defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before
24 dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*,
25 809 F.2d 1446, 1448 (9th Cir. 1987).

26 **III.     Analysis**

27 Defendant Smith argues that plaintiff's fourth amended complaint does not state an Eighth
28 Amendment claim against him.

1   To state a claim under § 1983, a plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). In sum, plaintiff must identify the particular person or persons who violated his rights. He must also plead facts showing how that particular person was involved in the alleged violation.

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id*.

/////

It is important to differentiate common law claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere indifference, negligence, or medical malpractice will not support th[e] cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (internal quotation marks omitted); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

Defendant Smith first argues that plaintiff's complaint does not allege that the deprivation of his assistive devices and medications could have resulted in further significant injury or the wanton infliction of pain because the exhibits attached to the complaint show that plaintiff was able to ambulate and was not in pain while he was incarcerated at the county jail. "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted)). When a complaint is accompanied by attached documents, however, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.*, 815 F.2d 1265,1267 (9th Cir. 1987), *cert. denied sub. nom. Wyoming Community Dev. Auth. v. Durning*, 484 U.S. 944 (1987).

Contrary to defendant Smith's assertions, the exhibits do not establish that plaintiff was free of pain and could walk easily during his entire stay at the jail. For example, on January 18, 2009, plaintiff complained that he was in "a lot of pain" without his Norco. ECF No. 24 at 18. On March 7, 2009, plaintiff's right foot was observed to be swollen, and plaintiff complained of pain greater than 10 on a scale of one to 10. *Id.* at 13. Plaintiff complained of back pain on March 8, 2009. *Id.* Plaintiff's limp or uneven gait was noted on several occasions. *Id.* at 8, 13, 24. Further, just because plaintiff attached the records to his complaint does not mean that he has adopted as true all of the statements in the documents, especially given that the records consist of factual assertions made by others. *See Furnace v. Sullivan*, No. C-07-4441-MMC, 2008 U.S. Dist. LEXIS 93464, at *13-14 (N.D. Cal. Nov. 10, 2008) (citing *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995)). While the exhibits provide a partial picture of the events alleged by plaintiff, the court cannot assume that they provide the full picture.

/////

Defendant Smith next argues that plaintiff's complaint does not allege facts showing that defendant Smith was subjectively aware that depriving plaintiff of his medications and assistive devices would pose a substantial risk of harm to plaintiff. Defendant Smith claims that the records appended to the complaint show that defendant Smith's only involvement with plaintiff's care occurred one day after plaintiff was booked into the jail and plaintiff has not alleged that he ever complained to defendant Smith that he needed the assistive devices or medications. This is not entirely clear, as the signature on many records is not legible. Further, the court cannot assume that the records appended to the complaint document each and every interaction plaintiff had with defendant Smith. Plaintiff alleges that he had a document in his file showing his need for a wheelchair and medication, but that defendant Smith took both. ECF No. 24 at 4. This claim suffices to allege that defendant Smith knew that plaintiff needed these medical items for his injuries but nonetheless discontinued them.

Lastly, defendant Smith argues that plaintiff has not pleaded facts showing that defendant Smith personally caused him harm. According to defendant Smith, "[a]lthough plaintiff repeatedly alleges facts showing that various medical staff members took away his back brace and wheelchair, he never implicates Dr. Smith." ECF No. 63-1 at 9. Not so. The complaint states, "After plaintiff arrived at RCCC, he got a chrono stating he need [sic] a wheelchair and meds, but Dr. Sotak *and Dr. Smith* took plaintiff off of the meds and wheelchair as well took [sic] his air cast and moved [him to] a floor that had stairs." ECF No. 24 at 4 (emphasis added). While plaintiff has appended a document signed by defendant Sotak discontinuing his permission for the wheelchair, this document does not establish that defendant Smith was not also involved in this decision.

Accordingly, defendant Smith's motion to dismiss must be denied.

**IV.     Recommendation**

For the foregoing reasons, it is hereby recommended that defendant Smith's March 6, 2013 motion to dismiss (ECF No. 63) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 24, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE